**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

BRIAN WOODRING; and BETHANY YORK,

    Plaintiffs,

v.                                          Case No. 6:14-cv-1067-Orl-37TBS

JEREMY HART; DAVID LOVELL; CHRISTOPHER WILLIAMS; FRANCIS HICKMAN; RYAN ENGLISH; FRANCIS SARIVOLA; and WAYNE IVEY,

    Defendants.

**ORDER**

This cause is before the Court on the following:

1. Motion to Dismiss Plaintiffs' Third Amended Complaint by Defendants (Doc. 54), filed December 10, 2014; and

2. Response to Motion to Dismiss Plaintiffs' Third Amended Complaint by Defendants (Doc. 56), filed January 26, 2015.

Upon consideration, the Court finds that the motion is due to be granted.

**BACKGROUND**

Despite previous admonitions (*see* Doc. 52, p. 5), factual allegations in Plaintiffs' Third Amended Complaint remain sparse. (*See* Doc. 53.) From what the Court can glean from the face of the pleading and the attachments thereto, the events underlying Plaintiffs' 42 U.S.C. § 1983 claims allegedly unfolded as follows:

On March 25, 2013, Sheriff's Deputy David Lovell conducted an undercover investigation into a Brevard County shop called "Kronic AM." (*See* Doc. 53-1, p. 2.) For

reasons unclear, the investigation led to the arrest of Plaintiff Bethany York, a Kronic AM employee, for selling alcohol to minors. (*See* Doc. 53, ¶ 24.)

During the investigation, Lovell noticed a "glass sales counter" containing several items that he believed to be drug paraphernalia. (Doc. 53-1, p. 2.)  Specifically, Lovell observed "in plain view" and "clearly marked for sale": two "Special Blue Suede Series" two-pint canisters labeled "Same gas as Whip-it"; "several miscellaneous inhalant canister parts and a small canister cleaning brush"; two twenty-four-pack boxes of whipped-cream charges labeled "Special Blue"; and three "straight Whip-it inhalant nozzles."[1] (*Id.*) Plaintiff Keith Woodring, the owner of Kronic AM, confirmed "that all of the items were for sale." (*Id.*)

Three days later, Lovell presented his observations to Brevard County Circuit Judge Robert Wohn Jr. in an arrest affidavit. (*See id.*) Based on the affidavit, Judge Wohn found probable cause to believe that Woodring had violated Florida Statutes § 893.147(2), which forbids possessing drug paraphernalia with the intent to sell it "under circumstances where one should reasonably know" that it would be used to "inject, ingest, inhale, or otherwise introduce [nitrous oxide] into the human body." (*See id.* (citing Fla. Stat. § 897.142(2)).) Judge Wohn accordingly issued a warrant for Woodring's arrest, which Lovell and other Brevard County Sheriff's Deputies executed the next day.

---

[1] Under Florida law, the term "drug paraphernalia" is defined in part as "[o]bjects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing . . . nitrous oxide into the human body." Fla. Stat. § 893.145. The term expressly includes: a "whip-it, which means a device that may be used to expel nitrous oxide"; a "cartridge or canister, which means a small metal device used to contain nitrous oxide";  a "charger, sometimes referred to as a 'cracker,' which means a small metal or plastic device that contains an interior pin that may be used to expel nitrous oxide from a cartridge or container"; and a "charging bottle, which means a device that may be used to expel nitrous oxide from a cartridge or canister." *Id.* § 893.145(12)(n)–(q).

(*See* Doc. 53, ¶¶ 12–13.)

Following their arrests, the Brevard County State Attorney's Office filed criminal charges against both Plaintiffs. (*See* Doc. 53, ¶ 15; Doc. 53-2.) York was presumably charged with violating Florida Statutes § 562.11(1)(a),[2] which prohibits selling alcohol to minors. (*See* Doc. 53, ¶ 24.) Woodring was charged with violating Florida Statues § 877.111—a slightly different charge than the § 893.147(2) violation identified in Judge Wohn's arrest warrant.[3] (*Compare* Doc. 53-1, *with* Doc. 53-2.) "[E]ventually, both of the criminal cases were dismissed with prejudice." (Doc. 53, ¶ 15.)

Based on those allegations, Plaintiffs invoke the Court's federal-question jurisdiction, and they each assert a § 1983 false-arrest claim against Lovell and the other arresting deputies. (*See id.* ¶¶ 5–6, 35–46.) Also based on essentially the same allegations, Plaintiffs invoke the Court's supplemental jurisdiction to assert several state-law tort claims against those Defendants as well as Brevard County Sheriff Wayne Ivey. (*See id.* ¶¶ 6, 18–34.)

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' § 1983 claims as barred by the doctrine of qualified immunity. (Doc. 54.) Plaintiffs oppose. (Doc. 56.) The matter is ripe for the Court's adjudication.

## STANDARDS

"At the motion to dismiss stage in the litigation, the qualified immunity inquiry and

---

[2] Plaintiffs insinuate but do not expressly state that York was charged on the offense for which she was arrested. (*See* Doc. 53, ¶¶ 24–25.)

[3] Section 893.147(2) prohibits possessing and intending to sell *drug paraphernalia* under circumstances where the seller *should reasonably know* that it would be used to introduce nitrous oxide into the human body, whereas § 877.111 prohibits, *inter alia*, selling *nitrous oxide* itself in order to *purposefully aid* others' intoxicating inhalation of the substance. *Compare* Fla. Stat. § 893.147(2), *with* Fla. Stat. § 877.111(2).

3

the Rule 12(b)(6) standard become intertwined." *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) (citation and internal quotation marks omitted). "Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established . . . constitutional rights of which a reasonable person would have known." *Id.* at 762 (citations, alterations, and internal quotation marks omitted). Under the Rule 12(b)(6) standard, the Court will dismiss a complaint if, after accepting all well-pleaded allegations as true and disregarding all conclusions of law, the complaint fails "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Taking the standards together, "[t]o survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law."[4] *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198–99 (11th Cir. 2012).

## DISCUSSION[5]

Plaintiffs assert their § 1983 claims together in a single count,[6] in which they allege that Defendants "falsely arrested" them in violation of their Fourth Amendment right to be free from unreasonable seizure. (*See* Doc. 53, ¶¶ 35–46.) Within the § 1983 count,

---

[4] The "*Twombly-Iqbal* plausibility standard" replaced the "heightened pleading standard" that the U.S. Court of Appeals for the Eleventh Circuit formerly imposed in § 1983 actions. *See Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010).

[5] For purposes of this discussion, the term "Defendants" includes Brevard County Sheriff's Deputies David Lovell, Jeremy Hart, Christopher Williams, Francis Hickman, Ryan English, and Francis Sarivola—but not Sheriff Wayne Ivey, who is named as a Defendant only in the state-law claims. (Doc. 53, ¶¶ 18–46)

[6] By commingling their claims, Plaintiffs violate Rule 10(b), which requires parties to state "each claim founded on a separate transaction or occurrence . . . in a separate count" if doing so "would promote clarity."

Plaintiffs themselves raise the issue of qualified immunity, conceding that "Defendants were acting within the scope of their discretionary duties" and acknowledging that Plaintiffs therefore bear the burden of demonstrating that qualified immunity should not bar their claims. (*See id.* ¶¶ 38–39 (citing *Franklin v. Curry*, 738 F.3d 1246 (11th Cir. 2013); *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)).) To carry that burden, York alleges that Defendants arrested her "for no reason, in an effort to harass and or humiliate her," and Woodring alleges that Defendants arrested him pursuant to a warrant obtained through "deceit, trickery, and false statements." (*See id.* ¶¶ 9, 12.) Woodring also takes issue with the fact that his arrest warrant indicated that he had violated Florida Statutes § 897.142(2) but he was ultimately arrested and prosecuted for violating § 877.111. (*See id.* ¶ 12.) The Court will address each claim in turn.

## I.     York's False-Arrest Claim

York's § 1983 false-arrest claim presents a classic example of "an unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to plausibly allege a constitutional violation and thus cannot survive Defendants' qualified-immunity motion to dismiss. *Iqbal*, 556 U.S. at 678. The only hint of the circumstances underlying York's arrest is the statement—buried in a paragraph from a state-law claim that was not incorporated into her § 1983 count—that she "was falsely arrested for Sale of an Alcoholic Beverage to a Person under 21" without any "reasonable basis . . . which would have provided probable cause for the Defendants to . . . arrest her." (Doc. 53, ¶ 24.)

As the Court noted in its order dismissing a previous, similarly unsupported iteration of York's false-arrest claim, "'[a]n arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim,' [but] the existence of

'probable cause or arguable probable[7] cause depends on the elements of the alleged crime *and the operative fact pattern*.'" (Doc. 52, pp. 3–4 (quoting *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734–35 (11th Cir. 2010) (emphasis added)).) Thus, plausibly alleging an arrest without probable cause requires at least minimal allegations regarding the factual circumstances of the arrest. *Cf. Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) (observing that whether "arguable probable cause" shields law enforcement officers from false-arrest claims depends upon the *factual circumstances* of the arrest).

Despite that explanation, York's false arrest claim in the Third Amended Complaint once again rests only on "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). York has therefore failed to plausibly allege that Defendants arrested her without probable cause, and thus her § 1983 false-arrest claim is due to be dismissed as barred by qualified immunity.

**II.    Woodring's False-Arrest Claim**

As a threshold matter, Woodring's § 1983 false-arrest claim fails from the outset because he was arrested pursuant to a warrant. (*See* Doc. 53-1.) "[W]here an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest." *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014).

Regardless, qualified immunity would have barred the § 1983 claim even if Woodring had properly pled it under the malicious-prosecution framework. Essentially, Woodring claims that the items identified as paraphernalia in his store were not actually

---

[7] While arrests without "probable cause" violate the Fourth Amendment, arresting officers need only have had "arguable probable cause" for qualified immunity to shield them from suit. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010).

6

"illegal to obtain or sell" and, consequently, Lovell's representations to the contrary in his arrest affidavit amounted to "deceit, trickery, and false statements." (*See* Doc. 56, pp. 4–5.) The problem with Woodring's claim is that it relies upon a non-sequitur: even if the items identified in Lovell's arrest affidavit were not actually "illegal to obtain or sell,"[8] Lovell's representation to the contrary would not necessarily amount to "deceit," "trickery," or any other type of *intentional* falsehood. As pled, Lovell could just as easily have been mistaken. (*See* Doc. 53, ¶¶ 10–14, 35–46.) This is not an academic point; making false statements in support of a warrant can violate the Fourth Amendment and give rise to a malicious prosecution claim, *see Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994), but qualified immunity bars such claims unless "the plaintiff can prove that the officer *perjured himself*—that is, put forth information *he did not believe or accept as true*—in order to

---

[8] This is a particularly generous assumption, given that Woodring's unsupported, conclusory contention that the items seized from Kronic AM were legal to sell completely ignores the context-sensitive state of Florida's paraphernalia laws.

For example, Woodring argues that the nitrous oxide canisters that Lovell identified in his affidavit could not have qualified as drug paraphernalia because they were merely "used for whip cream." (Doc. 56, p. 5.) However, at least one of the canisters identified at Kronic AM had a label—"Same gas as Whip-it"—that emphasized the *gas* that the container expelled rather than its potential use as a whipped-cream dispenser. (*See* Doc. 53, ¶ 10 (emphasis added); *see also* Doc. 56, pp. 4–5.) Moreover, as addressed above, Florida law explicitly defines the term "drug paraphernalia" to include "canisters . . . used to contain nitrous oxide" and "whip-its . . . used to expel nitrous oxide." Fla. Stat. § 893.145(12)(n), (q).

Further, to the extent that the canisters at Kronic AM had non-illicit uses, Florida Statutes § 893.146 directs law enforcement officers to consider context when determining whether a particular object is being sold as drug paraphernalia. Contextual considerations should account for "any materials accompanying the object which explain or depict its use," any "advertising," and the "manner in which the object is displayed for sale." *Id.* According to his arrest affidavit, Lovell made a context-specific judgment call that a two-pint canister labeled "Same gas as Whip-it"—displayed at a shop called "Kronic AM" in a "glass sales counter" between "drug test kits" and box with a "cannabis leaf" and a "burning joint" depicted on the lid—was, in this case, being sold as drug paraphernalia and not as an innocuous baking appliance. (*See* Doc. 53-1, p. 2.) Woodring makes no effort to explain why Lovell's judgment was allegedly incorrect. (*See* Doc. 56.)

7

obtain a search warrant." *Carter*, 557 F. App'x at 908 (emphasis added). Accordingly, at the motion to dismiss stage, viably alleging a perjurious-statement malicious-prosecution claim requires factual allegations bearing on the officer's "subjective belief about the veracity of the assertions made in his affidavit," such as a "possible motive" for the officer to lie. *Id.* at 910. Woodring makes no such allegations (*see* Doc. 53), and thus his § 1983 claim cannot survive Defendants' qualified-immunity motion to dismiss.

Finally, it is immaterial that the offense identified in Woodring's arrest warrant differed slightly from the offense for which he was ultimately arrested and charged. (*See id.* ¶ 12.) "Where a defendant [is] arrested for the 'wrong' offense, the arrest is nonetheless valid where the crime for which he was arrested and the crime for which there was probable cause to believe he had committed are closely related and there is no proof of sham or fraud." *United States v. Fossler*, 597 F.2d 478, 482 (5th Cir. 1979). Here, Florida Statutes § 893.147(2) and § 877.111(2) are closely related, *see supra* note 3, Woodring has not plausibly alleged that the different charges were the product of "sham or fraud" (*see* Doc. 53), and thus, as pled, Woodring's arrest was valid.

For those reasons, Woodring's § 1983 claim is due to be dismissed.

### III.   Remaining State-Law Claims

As discussed above, Plaintiffs' § 1983 claims—the only federal claims in this action (*see id.* ¶¶ 35–46)—are due to be dismissed. In light of Plaintiffs' failure to plead viable § 1983 claims after four attempts (*see* Docs. 1, 40, 48, 53), and consistent with the Court's previous warning (*see* Doc. 52, p. 5), the Court further finds that the § 1983 claims are due to be dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims, which lack an independent

jurisdictional basis. (*See* Doc. 53, ¶¶ 5–7); *see also* 28 U.S.C. § 1367(c)(3) (permitting a court to decline exercising supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"). The state-law claims are therefore due to be dismissed without prejudice—meaning that they may be refiled in state court, but not in this action.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Motion to Dismiss Plaintiffs' Third Amended Complaint by Defendants (Doc. 54) is **GRANTED**.

    a. Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983—that is, those claims in Count V (Doc. 53, ¶¶ 35–46)—are **DISMISSED WITH PREJUDICE**.

    b. Plaintiffs' state-law claims—that is, those claims in Counts I–IV (*id.* ¶¶ 18–34)—are **DISMISSED WITHOUT PREJUDICE** to their refiling in state court.

2. The clerk is **DIRECTED** to terminate all pending deadlines and to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 12, 2015.

ROY B. DALTON JR.
United States District Judge

9

Copies:

Counsel of Record

Case 6:14-cv-01067-RBD-TBS Document 57 Filed 05/12/15 Page 10 of 10 PageID 250